MICHAEL J. STORTZ (State Bar No. 139386)
Michael.Stortz@dbr.com
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105-2235
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Attorneys for Defendants
COMCAST OF ALAMEDA, INC.; COMCAST OF CALIFORNIA II, INC.; COMCAST OF CALIFORNIA III, INC.; COMCAST OF CALIFORNIA IX, INC.; COMCAST OF CALIFORNIA V, INC.; COMCAST OF CALIFORNIA VI, INC.; COMCAST OF CALIFORNIA X, INC.; COMCAST OF CALIFORNIA XIII, INC.; COMCAST CORPORATION; COMCAST OF FRESNO, INC.; COMCAST OF MARIN I, INC.; COMCAST OF MARIN II, INC.; COMCAST OF NORTHERN CALIFORNIA I, INC.; COMCAST OF NORTHERN CALIFORNIA II, INC.; COMCAST OF SACRAMENTO I, LLC; COMCAST OF SACRAMENTO II, LLC; COMCAST OF SAN LEANDRO, INC.; COMCAST OF SIERRA VALLEYS, INC.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| JON HART, On Behalf of Himself and All Others Similarly Situated, and On Behalf of the General Public,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST OF ALAMEDA, INC.; COMCAST OF CALIFORNIA II, INC.; COMCAST OF CALIFORNIA III, INC.; COMCAST OF CALIFORNIA IX INC.; COMCAST OF CALIFORNIA V INC.; COMCAST OF CALIFORNIA VI INC.; COMCAST OF CALIFORNIA X INC.; COMCAST OF CALIFORNIA XIII INC.; COMCAST CORPORATION; COMCAST OF FRESNO, INC.; COMCAST OF MARIN I, INC.; COMCAST OF MARIN II, INC.; COMCAST OF NORTHERN CALIFORNIA I, INC.; COMCAST OF NORTHERN CALIFORNIA II, INC.; COMCAST OF SACRAMENTO I, LLC; COMCAST OF SACRAMENTO II, LLC; COMCAST OF SAN LEANDRO, INC.; COMCAST OF SIERRA VALLEYS, INC.; and DOES 1-250,<br><br>Defendants. | Case No. C-07-06350 PJH<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date: June 18, 2008<br>Time: 9:00 a.m.<br>Dept: Courtroom 3<br>Judge: The Honorable Phyllis J. Hamilton |

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. STANDARD OF REVIEW ........................................................................................... 1

III. DISCUSSION ................................................................................................................. 2

    A. Mr. Hart's Claims Are Within The FCC's Primary Jurisdiction .................. 2

    B. Mr. Hart's Claims Are Preempted By Federal Law ....................................... 5

    C. Mr. Hart's Claims Fail As A Matter of State Law ......................................... 8

        1. Comcast's Conduct Is Not "Unfair" ................................................... 8

        2. Comcast's Conduct Is Not "Unlawful" ............................................... 8

        3. Comcast's Advertisements Are Not "Untrue or Misleading" ........ 11

        4. Comcast Did Not Breach Any Contractual Duty to Mr. Hart ......... 13

        5. Comcast Did Not Breach Any "Implied" Duty to Mr. Hart ............ 15

IV. CONCLUSION ............................................................................................................ 15

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

# TABLE OF AUTHORITIES

## DECISIONS

*In re AOL*,
  168 F. Supp. 2d 1359 (S.D. Fla. 2001) .............................................................. 9

*Aetna Health, Inc. v. Davila*,
  542 U.S. 200 (2004) ........................................................................................ 7

*Anthony v. Yahoo, Inc.*,
  421 F. Supp. 2d 1257 (N.D. Cal. 2006) ............................................... 6, 14, 15

*Arthur J. Gallagher & Co. v. Edgewood Partners Ins. Ctr.*,
  No. 07-06418, 2008 U.S. Dist. LEXIS 8924 (N.D. Cal. Jan. 23, 2008) .......... 10

*Bastien v. AT&T Wireless Servs., Inc.*,
  205 F.3d 983 (7th Cir. 2000) ........................................................................... 7

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003) ......................................................................... 6

*Brothers v. Hewlett-Packard Co.*,
  No. 06-2254, 2006 U.S. Dist. LEXIS 82027 (N.D. Cal. Oct. 31, 2006) ........ 11

*Brown v. MCI Worldcom Network Servs., Inc.*,
  277 F.3d 1166 (9th Cir. 2002) ......................................................................... 4

*In re Comcast Cellular Telecomms. Litig.*,
  949 F. Supp. 1193 (E.D. Pa. 1996) .................................................................. 7

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
  911 F.2d 242 (9th Cir. 1990) ......................................................................... 11

*Doe v. MySpace, Inc.*,
  474 F. Supp. 2d 843 (W.D. Tex. 2007) ........................................................... 6

*Fair Housing Council v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ......................................................................... 6

*Fed. Power Comm'n v. La. Power & Light Co.*,
  406 U.S. 621 (1972) ........................................................................................ 4

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ..................................................................... 11, 12

*Garelli Wong & Assocs. v. Nichols*,
  No. 07-6227, 2008 U.S. Dist. LEXIS 3288 (N.D. Ill. Jan. 16, 2008) ............... 9

*Green v. AOL*,
  318 F.3d 465 (3d Cir. 2003) ............................................................................ 6

*Hauter v. Zogarts*,
  534 P.2d 377 (Cal. 1975) ............................................................................... 12

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

*Langdon v. Google, Inc.*,
   474 F. Supp. 2d 622 (D. Del. 2007)..................................................................6

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ..........................................................................2

*Lloyd v. United States*,
   No. 03-813, 2005 U.S. Dist. LEXIS 18158 (D.N.J. Aug. 16, 2005) ................10

*Lockheed Martin Corp. v. Speed*,
   No. 05-1580, 2006 U.S. Dist. LEXIS 53108 (M.D. Fla. Aug. 1, 2006)...........10

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ..........................................................................6

*Miles v. AOL*,
   202 F.R.D. 297 (M.D. Fla. 2001) ..................................................................10

*Miles v. AOL*, No. 00-0273,
   slip op. (M.D. Fla. Aug. 30, 2002) ................................................................10

*Miles v. AOL*, No. 00-0273,
   slip op. (M.D. Fla. July 25, 2003).................................................................10

*Mirkin v. Wasserman*,
   858 P.2d 568 (Cal. 1993)..............................................................................13

*Nexans Wires S.A. v. Sark-USA, Inc.*,
   319 F. Supp. 2d 468 (S.D.N.Y. 2004) .............................................................9

*Oestreicher v. Alienware Corp.*,
   No. 07-0512, 2008 U.S. Dist. LEXIS 26160 (N.D. Cal. Apr. 1, 208).............11

*Phone-Tel Commc'ns, Inc. v. AT&T Corp.*,
   100 F. Supp. 2d 313 (E.D. Pa. 2000)..............................................................4

*Rowe v. N.H. Motor Transp. Ass'n*,
   128 S. Ct. 989 (U.S. 2008).............................................................................5

*Second Image, Inc. v. Ronsin Photocopy, Inc.*,
   No. 07-5424, 2007 U.S. Dist. LEXIS 95417 (N.D. Cal. Dec. 21, 2007) ...........9

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ..................................................................12-13

*Sw. Bell Tel. Co. v. FCC*,
   153 F.3d 523 (8th Cir. 1998) ..........................................................................5

*United States v. Gen. Dynamics Corp.*,
   828 F.2d 1356 (9th Cir. 1987) ........................................................................4

*Vonage Holdings Corp. v. MPUC*,
   290 F. Supp. 2d 993 (D. Minn. 2003).............................................................5

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

iii

*Williams v. Gerber Prods. Co.*,
  No. 06-5591, 2008 U.S. App. LEXIS 8599 (9th Cir. Apr. 21, 2008) ......... 11, 12

*Wolschlager v. Fidelity Nat. Title Ins. Co.*,
  4 Cal. Rptr. 3d 179 (Cal. Ct. App. 2003) .......................................................... 14

*Worldspan L.P. v. Orbitz*,
  No. 05-5386, 2006 U.S. Dist. LEXIS 26153 (N.D. Ill. Apr. 19, 2006) .............. 9

**STATUTES & CODES**

18 U.S.C. § 1030 ................................................................................................... 10

47 U.S.C. § 230 ................................................................................................... 5, 6

Fed. R. Civ. P. 201 .................................................................................................. 2

Fed. R. Civ. P. 803 .................................................................................................. 2

Fed. R. Civ. P. 902 .................................................................................................. 2

**OTHER AUTHORITIES**

Comments of Free Press, WC Dkt. No. 07-52 (filed Feb 13, 2008) *available at* http://fjallfoss.fcc.gov/prod/ecfs/retrieve.cgi?native_or_pdf=pdf&id_document=6519841216. ............................................................................ 2

DCIA, Comment On Petition For Rulemaking, No. 07-52 (Feb. 13, 2008), available at http://fjallfoss.fcc.gov/prod/ecfs/retrieve.cgi?native_or_pdf=pdf&id_document=6519841058 ........................................................ 7

Ira Teinowitz, *FCC Hearing Addresses Net Neutrality*, TV Week (Feb. 25, 2008), available at http://www.tvweek.com/news/2008/02/fcc_hearing_addresses_net_neut.php. ........................................................................ 3

Ryan Kim, *FCC Hears Net Neutrality Arguments At Stanford*, S.F. Chronicle (April 18, 2008), available at http://www.sfgate.com/cgi-bin/article.cgi?f=/ca/2008/04/18/BUM3107KI0.DTL&hw=Comcast+FCC&sn=005&sc=461 .... 3

Rich Karpinski, Telephony Online, *BitTorrent developers seek traffic-shaping route-around* (Feb. 19, 2008) available at http://telephonyonline.com/broadband/news/bittorrent-traffic-shaping-0219 ....................................... 7

Statement of Chairman Kevin J. Martin, En Banc Hearing of the FCC (Feb. 25, 2008), available at http://hraunfoss.fcc.gov/edocs_public/attachmatch/DOC-280446A1.pdf ........................................................................... 3

Speech of Chairman Kevin J. Martin (Mar. 7, 2008), available at http://www.law.stanford.edu/calendar/details/1948/%20Address%20by%20FCC%20Chairman%20Kevin%20Martin ............................................................. 4

## I. INTRODUCTION

In its opening brief, Comcast explained that this Court should stay this action because Mr. Hart's allegations are within the primary jurisdiction of the FCC and, if not, it should enter judgment against Mr. Hart because his claims are preempted by federal law and fail to state a claim under California law. Mr. Hart's arguments in response are a study in evasion. He ignores wholesale much of the dispositive authority cited in Comcast's opening brief, and relies himself on decisions that reject defenses Comcast has not even raised. He jettisons, or offers to jettison, whole claims in the Complaint in a wild effort to steer this case away from its inevitable fate. In the end his arguments, which are discussed at length below, have no basis in law or in fact. Comcast's Motion for Judgment on the Pleadings should be granted.

## II. STANDARD OF REVIEW

Mr. Hart protests that Comcast's Motion "completely disregards the proper standard of review" by introducing and relying on facts he says are disputed. Pl.'s Opp'n at 2.[1] To the contrary, the only documents attached to Comcast's Request for Judicial Notice were contract documents (i.e., recent versions of the Acceptable Use Policy ("AUP") and Frequently Asked Questions ("FAQs")) that are no longer publicly available and government documents posted on the FCC's website. Mr. Hart has not disputed the authenticity of any of those documents. Nor could he have, as he attached an earlier (and substantially similar) version of the subscriber agreement to his own Request for Judicial Notice. There was no error in Comcast's attaching those documents to its Motion and there would be no error in the Court's considering them. Courts may take judicial notice of government records and may consider contracts that are attached to a motions to dismiss without converting the motion into a summary judgment motion.

---

[1] Mr. Hart also argues, curiously, that "there is not a single cite to the Complaint in the 25-page memorandum supporting Defendants' Motion." Pl.'s Opp'n at 2. His hyperbole is patently false; Comcast's opening brief cited the Complaint several times. *See, e.g.*, Defs.' Motion at 8, 19, 20, 22 & 23.

*See* Fed. R. Civ. P. 201, 803(8), 902(4); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

To the extent Mr. Hart was referring to articles referenced in Comcast's Motion, those articles were offered to provide the Court with a general background about the operation of the Internet, not to disprove any of the specific allegations about what Comcast is or is not doing in managing its network. And for his part, Mr. Hart has not disagreed with any of them. Indeed, Mr. Hart cites some of the same documents for the same purpose. *See* Pl.'s Opp'n at 3. The only factual disagreement identified by Mr. Hart is his purported belief that Comcast manages P2P downloads just as it manages P2P uploads. *See* Pl.'s Opp'n at 14. If this action were to proceed to discovery on the merits despite the pending FCC proceedings, that allegation (which appears ***only once*** in Mr. Hart's ninety-nine paragraph Complaint) would very quickly be discredited.[2] For present purposes, however, that disagreement does not affect the disposition of this Motion. Even accepting that allegation as true, and taking all inferences in favor of Mr. Hart, his claims are still subject to dismissal for the reasons identified in Comcast's opening brief.

### III. DISCUSSION

#### A.   Mr. Hart's Claims Are Within The FCC's Primary Jurisdiction

In its opening brief, Comcast explained that the FCC is actively investigating the very same allegations that Mr. Hart makes here, and asked the Court to defer to the FCC's primary jurisdiction in this area. *See* Defs.' Motion at 10-12. Mr. Hart's Opposition reads as if his Complaint advanced only state law claims for fraudulent advertising and breach of contract, which he believes are not within the FCC's primary

---

[2]   Not even Free Press, which filed the FCC Petition that was the inspiration for this lawsuit, believes that Comcast directly manages P2P downloads. *See, e.g.*, Comments of Free Press, WC Dkt. No. 07-52, at 8-9 (filed Feb 13, 2008) ("The AP was blocked from ***uploading*** the King James Bible and EFF from ***uploading*** a file of less than 1mb, meaning that Comcast blocks ***uploading*** even of small files from users who are not engaging in multiple or continuous ***uploading*** of large files.") (emphasis added), *available at* http://fjallfoss.fcc.gov/prod/ecfs/retrieve.cgi?native_or_pdf=pdf&id_document=6519841216. Nor does any credible commentator on the matter, regardless of which side they have taken in this debate.

jurisdiction. Indeed, Mr. Hart all but ignores his claims that Comcast's network management practices are "unfair" or that they are "unlawful" because they violate the CFAA or the FCC's Internet Policy Statement. Mr. Hart even volunteers to dismiss the latter claim to avoid, as he puts it, "distractions." Pl.'s Opp'n at 2 n.1. At a minimum, those claims should be stayed during the pendency of the FCC proceeding, as they are squarely in the heartland of the FCC's primary jurisdiction.

Mr. Hart suggests that his fraudulent advertising and breach of contract claims should not be stayed here because "the FCC is not addressing" those claims. *Id.* at 21. That is simply not the case. The questioning during the two hearings held by the FCC,[3] as well as the opening statements of FCC Chairman Kevin Martin,[4] make clear that the FCC is actively investigating not only the technical aspects of network management, but also the disclosure of those practices to consumers. Indeed, even Mr. Hart admits that the Free Press Petition that was the genesis of this lawsuit asks the FCC to declare that Comcast's conduct constitutes a deceptive business practice. *See* Pl.'s Opp'n at 22 n.15. Mr. Hart's argument simply ignores the record of the FCC proceedings.

Mr. Hart also opposes a stay because it would lead to "unnecessary delay" and because the FCC is, in his view, "not likely to act . . . any time soon." Pl.'s Opp'n at 21.

---

[3] Although the FCC has not made transcripts of those hearings available, it has made recordings available. *See* http://www.fcc.gov/realaudio/agendameetings.html. Those hearings were also attended by reporters, who confirm that the FCC's focus is not limited to technical aspects of network management. *See, e.g.*, Ryan Kim, *FCC Hears Net Neutrality Arguments At Stanford*, S.F. Chronicle (April 18, 2008), available at http://www.sfgate.com/cgi-bin/article.cgi?f=/c/a/2008/04/18/BUM3107KI0.DTL&hw=Comcast+FCC&sn=005&sc=461; Ira Teinowitz, *FCC Hearing Addresses Net Neutrality*, TV Week (Feb. 25, 2008), available at http://www.tvweek.com/news/2008/02/fcc_hearing_addresses_net_neut.php.

[4] *See* Statement of Chairman Kevin J. Martin, En Banc Hearing of the FCC (Feb. 25, 2008), available at http://hraunfoss.fcc.gov/edocs_public/attachmatch/DOC-280446A1.pdf ("Networks may have legitimate network management practices. Obviously network operators can take reasonable steps to manage traffic, but they cannot arbitrarily block access. This raises several issues in my mind. First, it seems important that they do so in a reasonable, open, and transparent way. Consumers need to know if and how network management practices distinguish between different applications, so that consumers can configure their own applications and systems properly. And it means providing transparency to broadband consumers – in the promises to deliver increased speeds, services, and pricing. Consumers have alleged that operators are blocking or degrading consumers' access to the Internet by distinguishing between certain peer to peer applications. Consumers have alleged that these operator practices have not been transparent. These are very significant issues. The seriousness of it is one of the reasons we're holding this hearing. . . . The Commission is ready, willing and able to step in if necessary.").

Mr. Hart is wrong on the facts and the law.  With regard to the facts, he supports his argument by citing a statement made by Commissioner Michael Copps that "chastised" his fellow Commissioners for their "leisurely" approach.  *Id.*  However, that statement was made on March 22, 2007, about eight months ***before*** Free Press filed its Petition.  *Id.*  Since then, the FCC's pace has been anything but "leisurely": it has issued two public notices, held two public hearings, and indicated that it will rule in the next few months.[5]  This issue is at the top of the FCC's agenda.  And with regard to the law, it does not matter whether the FCC will make its ruling next month or next year.  Courts cannot expect the FCC to issue its rulings overnight.  Rather, as the Ninth Circuit has found, courts must "give the parties reasonable opportunity" to obtain an "administrative ruling."  *Brown v. MCI Worldcom Network Servs., Inc.*, 277 F.3d 1166, 1173 (9th Cir. 2002).  Indeed, the Supreme Court has explained that courts are "obliged to defer" to an agency where, as here, the "issue brought before a court is in the process of litigation through procedures originating in the [agency]."  *Fed. Power Comm'n v. La. Power & Light Co.*, 406 U.S. 621, 647 (1972) (brackets in original); *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1364 n.15 (9th Cir. 1987) ("[A]n issue either is within an agency's primary jurisdiction or it is not, and, if it is, a court may not act until the agency has made the initial determination.").  Thus, an argument that "referring the matter to the FCC will further delay" the court proceedings is "misplaced because application of the doctrine of primary jurisdiction is not discretionary. . . . [R]egardless of the equities involved, referral to the FCC, in the first instance, of issues which the court finds are within the FCC's special competence is mandatory."  *Phone-Tel Commc'ns, Inc. v. AT&T Corp.*, 100 F. Supp. 2d 313, 321 (E.D. Pa. 2000).

---

[5] *See* Speech of Chairman Kevin J. Martin (Mar. 7, 2008), available at http://www.law.stanford.edu/calendar/details/1948/%20Address%20by%20FCC%20Chairman%20Kevin%20Martin ("I think that it is important for us to try to respond quickly to the complaints.  These complaints were just filed at the end of last year.  We had a hearing – already one hearing in February, which was a very quick response for the Commission trying to address the issue and I think we need to make sure that we're addressing it sometime in the first half of this year.  It's almost the end of the first quarter, so I would imagine some time in the second quarter of this year.") (written transcript unavailable).

Finally, Mr. Hart notes that Comcast has asked the FCC not to act on the Petitions pending before it, the implication being that this is inconsistent with seeking a stay here. *See* Pl.'s Opp'n at 22 n.15. However, Comcast was quite candid in its opening brief that it does not believe that FCC should act because, among other reasons, Congress has expressed a clear policy favoring reliance on competitive market forces over heavy handed regulation of the Internet. Nevertheless, the fact remains that the FCC is reviewing the claims that fuel this action, and whether it acts is up to it, not Comcast. As a matter of judicial economy and sound case management, it makes sense to stay this action and allow the FCC time to provide guidance in this area before moving forward. In any event, and more importantly, the doctrine of primary jurisdiction requires it.

### B. Mr. Hart's Claims Are Preempted By Federal Law

Comcast's opening brief explained that Congress has preempted state regulation of the Internet and that federal courts and the FCC have given effect to this federal policy. *See* Def.'s Motion at 13-16; 47 U.S.C. § 230(b)(2); *Sw. Bell Tel. Co. v. FCC*, 153 F.3d 523 (8th Cir. 1998); *Vonage Holdings Corp. v. MPUC*, 290 F. Supp. 2d 993 (D. Minn. 2003)). Indeed, the United States Supreme Court recently confirmed that Congress's decision to allow market forces to determine the kinds of services offered to consumers has the effect of preempting state regulation. *See Rowe v. N.H. Motor Transp. Ass'n*, 128 S. Ct. 989, 996 (U.S. 2008) (holding that state regulation of trucking industry was preempted because "to interpret the federal law to permit these, and similar, state requirements could easily lead to a patchwork of state service-determining laws, rules, and regulations. That state regulatory patchwork is inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace."). This case raises the same issues.[6]

---

[6] The Court need look no further than this very case to see the competitive marketplace in action; although Comcast denies any wrongdoing whatsoever, the marketplace demanded that it find alternative ways to manage P2P congestion on its network and, as Mr. Hart acknowledges, Comcast has done so.

In his Opposition, Mr. Hart claims that this defense has been "uniformly rejected." Pl.'s Opp'n at 23-25.  However, Mr. Hart fails to discuss – let alone distinguish – ***any*** of the federal preemption decisions cited in Comcast's brief.  Instead, he tries to confuse the Court by citing cases that concern an ISP's federal ***immunity*** under 47 U.S.C. § 230(c), a part of the Communications Decency Act not even mentioned in Comcast's Motion.  That provision grants ISPs immunity for the third-party content that they publish or for their efforts to restrict objectionable transmissions.  *See*  47 U.S.C. § 230(c)(1) and (2).  Comcast has claimed neither immunity in this case.  Consequently, the three decisions Mr. Hart does cite are totally inapposite.  Indeed, not one of them even mentions the word "preemption."  *See* Pls.' Opp'n at 24 (citing *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008); *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003); *Anthony v. Yahoo, Inc.*, 421 F. Supp. 2d 1257, 1262 (N.D. Cal. 2006)).[7]

Mr. Hart also argues that not ***all*** of his claims would be preempted.  Specifically, he suggests that his contract and consumer fraud claims would not be preempted because, unlike his various "unfairness" and "unlawfulness" claims, the contract and consumer fraud claims do not concern the propriety of the way Comcast manages its network.  Again, Mr. Hart is mistaken.  Although genuine "consumer fraud" claims are generally left to the states and are generally not preempted,[8] this case presents anything but a conventional "consumer fraud" claim.

Courts need not accept a plaintiff's characterization of his claims as true.  Rather, courts have an obligation to look beyond the labels used by the plaintiff and to determine

---

[7]   It should also be noted that even the argument Mr. Hart ***thinks*** Comcast made has not been "uniformly rejected."   To the contrary, courts have on many occasions granted such immunity for claims beyond publisher liability for third party content – sometimes in cases with facts strikingly similar to ours. *See, e.g.*, *Green v. AOL*, 318 F.3d 465 (3d Cir. 2003) (immunizing ISP from consumer fraud claims premised on the ISP's attempts to limit the transmission of spam despite advertising "unlimited" service); *see also Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 630-31 (D. Del. 2007) (immunizing ISP against allegations of fraud, breach of contract, deceptive business practices); *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843 (W.D. Tex. 2007) (immunizing web site against claims of negligence, gross negligence, fraud, and negligent misrepresentation for ineffective security measures).  So, contrary to Mr. Hart's *non sequitor*, the immunity granted to ISPs by § 230(c) actually provides an additional basis for dismissing his claims.

[8]   *See, e.g.*, *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007).

what the plaintiff is actually challenging and actually seeking in terms of relief. *See, e.g.*, *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 214 (2004) ("distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would 'elevate form over substance and allow parties to evade' the preemptive scope of [the federal statute] simply 'by relabeling their . . . claims. . . .'"); *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 987, 989-90 (7th Cir. 2000) (noting that court is not "bound by the names and labels" used in a complaint, but rather must determine whether plaintiff "actually challenges" rates by asking "what the nature of the claims are and what the effect of granting the relief requested would be."); *In re Comcast Cellular Telecomms. Litig.*, 949 F. Supp. 1193, 1203-04 (E.D. Pa. 1996) (conducting a "careful reading of the complaint and the remedies sought" and deciding to "recharacterize" plaintiff's state-law claims as federal and removable).

Here, Mr. Hart's contract documents disclosed that Comcast could manage its network by monitoring it for congestion and managing congestive transmissions when it became necessary to do so. *See* Comcast's Motion at 8-9. Accordingly, Mr. Hart can only be asking the Court to compel Comcast to reveal exactly when this network management is triggered, exactly when it abates, and/or exactly what protocols it affects, i.e., exactly what one would want to know if they were devising a way to circumvent it. In short, requiring the degree of "disclosure" sought by Mr. Hart would enable a small but sophisticated subset of subscribers to evade this network management entirely,[9] a result that is functionally indistinguishable from requiring Comcast to cease its network management altogether. Both claims seek to use state law to regulate the way Comcast manages its network, albeit one more directly than the other. Both are preempted.

---

[9] *See, e.g.*, DCIA, Comment On Petition For Rulemaking, No. 07-52, at 8 (Feb. 13, 2008), available at http://fjallfoss.fcc.gov/prod/ecfs/retrieve.cgi?native_or_pdf=pdf&id_document=6519841058; Rich Karpinski, Telephony Online, *BitTorrent developers seek traffic-shaping route-around* (Feb. 19, 2008) (reporting only a week after Comcast filed FCC comments that BitTorrent programmers had used the now-public information to develop a way to "thwart" Comcast's P2P management), available at http://telephonyonline.com/broadband/news/bittorrent-traffic-shaping-0219.

**C.   Mr. Hart's Claims Fail As A Matter Of State Law**

**1.   Comcast's Conduct Is Not "Unfair"**

Mr. Hart's response in support of this claim is full-scale retreat from his pleading; he abandons any hint that Comcast's network management practice itself is "unfair," and instead claims that it is Comcast's ***disclosures*** that are "unfair."  *See* Pl.'s Opp'n at 16 ("Plaintiff alleges that Defendants misrepresent that their customers will enjoy unfettered access to all internet applications while at the same time severely limiting access to certain applications."); *id.* at 16 ("Defendants do not and cannot explain any business justification for failing to inform their customers that they block or interfere with the Blocked Applications."); *id.* at 17 (discussing "Defendants' practice of promising to provide unrestricted internet access . . . while at the same time secretly restricting such access."); *id.* at 17 n.1 ("Plaintiff's claims revolve around the contradiction between Defendants' representations and their conduct."); *id.* at 2 ("the principal issue here is not whether Defendants engaged in reasonable network management, but whether they baited customers with false and misleading representations"); *id.* at 21 ("the gravamen of Plaintiff's Complaint" is "that Defendants breached their contracts with and misled their subscribers."). So limited, this claim is a redundancy. To avoid further redundancy, Comcast directs the Court's to its discussion of Mr. Hart's advertising allegations below.

**2.   Comcast's Conduct Is Not "Unlawful"**

To his credit, Mr. Hart has also abandoned his claim that Comcast's conduct is "unlawful" because it violates the FCC's Internet Policy Statement. Pl.'s Opp'n at 2, 14. As a result, this claim now hinges on whether Comcast's conduct violated the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030. It did not.[10]

Mr. Hart suggests in his Opposition that he has adequately pleaded the sort of "damage" and the amount of "loss" required of those who would advance a CFAA claim.

---

[10]   Mr. Hart also suggests that this claim survives if he has stated a claim under the CLRA or FAL. Those claims also have no merit, as is explained in this and in Comcast's opening brief.

To the contrary, both his Complaint and his Opposition merely parrot the language of the statute without alleging any facts that, if proven, would establish these requirements. As this Court has found, merely reciting the statute is not enough to state a claim. *See Second Image, Inc. v. Ronsin Photocopy, Inc.*, No. 07-5424, 2007 U.S. Dist. LEXIS 95417, at *3-4 (N.D. Cal. Dec. 21, 2007) (Hamilton, J.); *see also Garelli Wong & Assocs. v. Nichols*, No. 07-6227, 2008 U.S. Dist. LEXIS 3288, at *18 (N.D. Ill. Jan. 16, 2008); *Worldspan L.P. v. Orbitz*, No. 05-5386, 2006 U.S. Dist. LEXIS 26153, at *15 (N.D. Ill. Apr. 19, 2006) ("Orbitz correctly asserts that the complaint merely parrots the 'causing damage' text of the CFAA in conclusory fashion and fails to allege any facts indicating that the completeness, useability, or availability of Worldspan's data was impaired."); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 478 (S.D.N.Y. 2004) ("Plaintiffs have not . . . shown that they can prove an essential element of their federal claims, namely, that plaintiffs suffered a 'loss' of $5,000 within the meaning of the CFAA.").[11] Here, Mr. Hart's Opposition does not cite to any portion of his Complaint that alleged a factual basis for claiming compensable "damage" or quantifiable "loss." Nor could it have.

Mr. Hart also suggests that there may be some disagreement in the case law about whether "without authorization" modifies "damage" or "transmission." Pl.'s Opp'n at 15. To be clear, there is no disagreement; it is indisputable that "without authorization" modifies "damage," not "transmission," and Mr. Hart cites no authority to the contrary.[12]

---

[11] Mr. Hart's reliance on *Nexans* is, at best, misplaced. In *Nexans*, the plaintiff simply cut and pasted the language of the CFAA into the complaint. Finding the pleading insufficient, the court required the plaintiff to submit facts, by way of affidavit, to establish the amount of "loss" required by the statute. Then, upon reviewing the affidavit, the court rejected the allegation of "loss" altogether. Here, Mr. Hart has not even bothered to submit an affidavit, which his own authority indicated he could have done.

[12] The only decision cited by Mr. Hart in this discussion is *In re AOL*, 168 F. Supp. 2d 1359, 1371 (S.D. Fla. 2001), which actually supports Comcast's position. *See id.* at 1371 ("Unlike §§ 1030(a)(5)(B) and (C), in which 'accesses' is modified by 'without authorization', 'without authorization' is used in § 1030(a)(5)(A) to modify 'causes damage.' . . . Again, the legislative history reinforces this conclusion."). Moreover, the court dismissed the plaintiffs' claims (albeit without prejudice) because, like Mr. Hart, their complaint "fails to sufficiently allege that individuals have suffered aggregate harm in the amount of $ 5,000." *Id.* at 1374.

*See* 18 U.S.C. § 1030(a)(5)(A)(i) ("Whoever . . . knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer."); *see also Arthur J. Gallagher & Co. v. Edgewood Partners Ins. Ctr.*, No. 07-06418, 2008 U.S. Dist. LEXIS 8924, at *7 (N.D. Cal. Jan. 23, 2008); *Lockheed Martin Corp. v. Speed*, No. 05-1580, 2006 U.S. Dist. LEXIS 53108, at *21 n.8 (M.D. Fla. Aug. 1, 2006); *Lloyd v. United States*, No. 03-813, 2005 U.S. Dist. LEXIS 18158, at *24 (D.N.J. Aug. 16, 2005). Accordingly, § 1030(a)(5)(A)(i) is not concerned with whether the transmission of reset packets was done without authorization. Rather, it hinges on whether the alleged "damage" was unauthorized. And, as is explained above, it was. The parties' contract, which the Court can consider for purposes of this Motion, is clear on that point.

Finally, Mr. Hart is simply wrong to suggest that applying the CFAA in this case would be "consistent with prior authority. . . ." Pl.'s Opp'n at 15. Mr. Hart does not discuss – let alone distinguish – ***any*** of the legislative history cited in Comcast's Motion. Instead, he cites *Miles v. AOL*, 202 F.R.D. 297 (M.D. Fla. 2001) for the proposition of "class certification of CFAA claim against ISP." *Id.* This is a puzzling position, as the decision did not address the merits of the plaintiff's claims,[13] the allegations are easily distinguishable from Mr. Hart's,[14] and, to the extent the Court is curious, the certification decision was subsequently vacated by the judge that issued it.[15]

In short, none of the authority cited by Mr. Hart responds to the argument that the

---

[13]  *See Miles*, 202 F.R.D. at 300 ("it is not appropriate at this stage in the litigation to evaluate the merits of Plaintiffs' claims"); *id.* at 301 ("a class certification ruling is not a decision on the merits").

[14]  In *Miles*, the plaintiff alleged that AOL had violated the CFAA by configuring his computer to dial long-distance numbers in order to access AOL's service, thereby causing him to incur unnecessary and unauthorized expenses. *See Miles*, 202 F.R.D. at 299 n.1.

[15]  Pursuant to its continuing duty to consider the propriety of class certification, the court in *Miles* decertified all of the plaintiffs' state law claims and questioned whether the plaintiffs' CFAA claim could be certified in light of the fact that, *inter alia*, "causation issues appear to be somewhat individualized." *Miles v. AOL*, No. 00-0273, slip op. at 4-5 (M.D. Fla. Aug. 30, 2002) (Exhibit A). The plaintiffs sought appellate review and ultimately abandoned all of their class claims, after which the court vacated its order. *See Miles v. AOL*, No. 00-0273, slip op. at 1 (M.D. Fla. July 25, 2003) (Exhibit B).

1  CFAA was intended to prevent activities that could clog computer networks, and that
2  Congress cannot possibly have intended for the CFAA to be read in a way that would
3  prevent P2P management, i.e., in a way that would cause P2P traffic to clog the Internet.
4  Imposing liability here would turn the CFAA on its head.

### 3. Comcast's Advertisements Are Not "Untrue or Misleading"

Mr. Hart's primary response in support of this claim is that the Court should allow discovery before assessing the merits of Comcast's defenses. *See* Pl.'s Opp'n at 11-12 (citing *Williams v. Gerber Prods. Co.*, No. 06-5591, 2008 U.S. App. LEXIS 8599 (9th Cir. Apr. 21, 2008)). However, there is no bright line rule like the one he advocates here. To the contrary, "[d]istrict courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and [there is] ***no sound reason why they should not do so.***" *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245-46 (9th Cir. 1990) (citing cases); *see also Oestreicher v. Alienware Corp.*, No. 07-0512, 2008 U.S. Dist. LEXIS 26160, at *22-24 (N.D. Cal. Apr. 1, 208) (Patel, J.); *Brothers v. Hewlett-Packard Co.*, No. 06-2254, 2006 U.S. Dist. LEXIS 82027, at *13-18 (N.D. Cal. Oct. 31, 2006) (Whyte, J.). Even *Gerber*, the primary authority cited by Mr. Hart, concedes that courts may resolve this issue on the pleadings in appropriate cases. *See Gerber*, 2008 U.S. App. LEXIS 8599, at *9-10 (distinguishing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).

This is such a case. The advertising alleged in this case is far closer to that in *Freeman*, in which the Ninth Circuit affirmed the lower court's order of dismissal, than it is to *Gerber*, in which the Ninth Circuit reversed the lower court's order of dismissal. Here, as in *Freeman*, "the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Gerber*, 2008 U.S. App. LEXIS 8599, at *10. Mr. Hart alleges that Comcast advertised that its service was "***up to*** 4 times faster than 1.5 Mbps DSL and ***up to*** twice as fast as 3.0 Mbps DSL" and stated in its subscriber agreement that speed tiers range from 4.0 to 16.0 Mbps download speed. Pl.'s Compl. ¶¶ 40-41 (emphasis added). With respect to the advertisements, Comcast

explained in its opening brief that these statements suggested a maximum speed, not a minimum one, and thus could only be misleading if Comcast's service were too fast – which is obviously not what Mr. Hart is alleging. *See* Defs.' Motion at 23. Mr. Hart's Opposition does not suggest otherwise. As for any statements in Comcast's subscriber agreement, they must be read as part of the entire document. And that document, a version of which Mr. Hart attached to his own brief, makes it clear that "Actual speeds may vary and are not guaranteed. Many factors affect speed." Pl.'s Opp'n, RJN, Ex. 1 at 1. It would, therefore, be patently unreasonable for anyone to expect a guaranteed, constant transmission speed. The terms and conditions of service clearly discourage any such expectation.

Mr. Hart also admits that Comcast's advertisements do contain puffery, but argues that they somehow "contribute" to its allegedly deceptive conduct. Pl.'s Opp'n at 12-13. However, he fails to cite any authority for the proposition that statements of puffery, made in various media at various times, can contribute to a "climate" of deceptiveness.[16] Comcast is aware of none. Simply put, it is hard to fathom how statements such as "mind-blowing speed" or "crazy-fast speed" could ever be considered anything other than a seller puffing his wares. *Accord Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) ("Puffing is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely."). Such statements – either read alone or together with similar statements – cannot possibly give rise to a claim for relief.

---

[16] Mr. Hart cites *Gerber* and *Hauter v. Zogarts*, 534 P.2d 377, 382 (Cal. 1975), for the proposition that puffery "can contribute to the overall deceptiveness of a ***business practice*** as a whole." Pl.'s Opp'n at 13 (emphasis added). Neither decisions stands for that proposition. In *Gerber*, the court limited its analysis to contemporaneous statements made in the same place, i.e., the same box of fruit snacks. *See Gerber*, 2008 U.S. LEXIS 8599, at *10 & n.3. And in *Hauter*, the court concluded that the statement "Completely Safe. Ball Will Not Hit Player" was not puffery at all, but rather a factual affirmation of the product's suitability for novice golfers. *Hauter*, 534 P.2d at 382. Although courts do analyze would-be puffery "in context," that "context" refers to other statements made at the same time and place, not an entire marketing campaign. *See Gerber*, 2008 U.S. LEXIS 8599, at *10 & n.3; *see also Southland*, 108 F.3d at 1143-45 (analyzing separately each allegedly false or deceptive advertisement to determine whether statements contained therein were puffery); *Freeman*, 68 F.3d at 290 (reviewing statements in context of entire sweepstakes mailer). The result cannot be otherwise; in an individual action, Mr. Hart would have to allege which advertisement he actually saw, and it would be that advertisement that the Court would scrutinize. That does not change just because Mr. Hart purports to represent a class.

Moreover, the disclosures in Comcast's subscriber agreement and AUP are different than the disclosures on the fruit snack box in *Gerber* because they are a part of the parties' contract. The consumer in *Gerber* had no agreement with Gerber and could credibly contend that she was misled by the conflicting nutritional information printed on the boxes she purchased. Here, however, Mr. Hart does have a contract with Comcast, and in that contract he agreed that Comcast could monitor its network for congestion and manage congestive transmissions when necessary – which is precisely what Comcast did. This case is not *Gerber*.

Mr. Hart's final argument is that, assuming none of Comcast's affirmative statements were deceptive, it concealed material facts from its subscribers. *See* Pl.'s Opp'n at 13. The most obvious problem with this argument is that, as explained above, Comcast did in fact disclose that it monitors congestion and manages congestive transmissions to prevent them from interfering with subscribers' Internet experiences. Assuming that were not the case, however, a fraudulent omission claim cannot stand here because no reasonable consumer would have acted differently had Comcast made the kind of disclosure Mr. Hart believes should have been made. *See Mirkin v. Wasserman*, 858 P.2d 568, 572-74 (Cal. 1993). To the contrary, no reasonable consumer expects that the use of Comcast's service would be unconstrained in any way whatsoever. Taken to its logical extreme, Mr. Hart's argument would prevent Comcast from protecting subscribers from spam and worms, as doing so would always "fetter" someone's access to the Internet. But reasonable consumers expect Comcast to do so. Indeed, they rely on it to do so. Thus, at the heart of Mr. Hart's claims is his belief that it is acceptable to manage congestive worms or spam but not acceptable to manage congestive P2P traffic – a policy debate that is best resolved by the FCC.

**4.     Comcast Did Not Breach Any Contractual Duty To Mr. Hart**

Mr. Hart's Opposition fails to cite any specific provision in his agreement that he believes Comcast has violated. *See* Pl.'s Opp'n at 6-8. Indeed, most of his discussion of this claim argues that there is no provision that affirmatively allows Comcast to manage

its network the way it does.  Although that discussion is flawed for a number of reasons,[17] it is also irrelevant.  What matters for purposes of a breach of contract claim is not whether the contract permits the conduct alleged, but whether the contract prohibits it.  Here, neither the letter nor the spirit of the parties' contract prohibits it.

*Anthony v. Yahoo*, a decision cited for another proposition in Mr. Hart's Opposition, is instructive.  *See* Pl.'s Opp'n at 24.  In *Anthony*, the plaintiff claimed that Yahoo had breached the "entire purpose" and "entire premise" of the parties' agreement by creating false profiles on its online dating service in order to encourage him to join.  The court disagreed, finding no affirmative promise not to create false profiles:

> Anthony cannot identify any contractual term that requires Yahoo! not to create or forward false profiles.  First, he asserts that Yahoo! breached its Personals Guidelines, which provide that "Yahoo! Personals gives Yahoo! users a way to find and interact with other people who may share their interests and goals. Just like a real community, different people may have different opinions and personalities in Yahoo! Personals.". . .  However, the language upon which Anthony relies merely describes Yahoo!'s dating service and does not commit Yahoo! to performing or not performing any particular action.  Anthony cannot predicate a breach of contract claim upon it.

*Anthony*, 421 F. Supp. 2d at 1260-61 (Whyte, J.) (citations omitted).  Mr. Hart's contract claims should suffer the same fate.

---

[17] Mr. Hart suggests that the AUP "cannot and does not" authorize Comcast to manage P2P traffic because "it is not even part of the contract between Defendants and their customers."  Pl.'s Opp'n at 7.  That argument lacks merit.  "For the terms of another document to be incorporated into the document . . . the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Wolschlager v. Fidelity Nat. Title Ins. Co.*, 4  Cal. Rptr. 3d 179, 184 (Cal. Ct. App. 2003).  That test is easily satisfied here.  Section 5 of the agreement that Mr. Hart attached to his Opposition states: "**Acceptable Use Policy:** You expressly agree not to use the Comcast Equipment or the Service, directly or indirectly, . . . in violation of any posted Comcast policy applicable to the Service, including without limitation any Comcast Acceptable Use Policy . . . or other policy posted on the Service's web site at www.comcast.net."  Pl.'s Sec. RFJN at 10-11 (emphasis in original).  It clearly indicated an intent to incorporate the AUP, called attention to it by placing it in bold text, and directed Mr. Hart to the website where anyone with rudimentary internet browsing skills could easily find it.

### 5. Comcast Did Not Breach Any "Implied" Duty To Mr. Hart

Mr. Hart offers no meaningful response to Comcast's many defenses to this claim. He argues that Comcast's network management breached this implied duty because "the contract promises unfettered access to the internet." Pl.'s Opp'n at 9. The contract, however, says no such thing. Indeed, Mr. Hart attached a version of the subscriber agreement to his brief, yet fails to direct the Court to any provision even *using* the word "unfettered," let alone one promising "unfettered" access to the Internet. Comcast has already discussed the disclosures in its contract documents and will not do so again here. Although Mr. Hart has alleged that Comcast advertised unfettered access to the Internet, it is clear that he did not *contract* for unfettered access to the Internet. Accordingly, this claim should be dismissed for the reasons already set forth in Comcast's opening brief.

### IV. CONCLUSION

For the foregoing reasons, Comcast respectfully requests that the Court grant this Motion and enter judgment in favor of Comcast and against Plaintiff Jon Hart.

Respectfully submitted,

Dated: May 28, 2008

DRINKER BIDDLE & REATH LLP

/s/ Michael J. Stortz
MICHAEL J. STORTZ

*Counsel for Defendants*