United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JON HART,

    Plaintiff,                                        No. C 07-6350 PJH

    v.                                               **ORDER GRANTING REQUEST TO STAY**

COMCAST OF ALAMEDA, et al.,

    Defendants.

_____/

       Defendants' motion for judgment on the pleadings and corresponding request for a stay came on for hearing before this court on June 18, 2008. Plaintiff John Hart ("plaintiff") appeared through his counsel, Mark N. Todzo. Defendants, various Comcast entities (collectively "defendants"), appeared through their counsel, Seamus Duffy and Michael P. Daly. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' request for a stay as follows, for the reasons indicated at the hearing, and summarized as follows.

       Defendants' preliminary challenge to plaintiff's complaint, on primary jurisdiction grounds, is well taken. The primary jurisdiction doctrine "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision-making responsibility should be performed by the relevant agency rather than the courts." See Davel Commc'ns, Inc. v. Qwest Corp., 460 F.3d 1075, 1080, 1086 (9th Cir. 2006) (doctrine applies to claims properly cognizable in court that contain some issue within the special competence of an administrative agency); see also Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc., 307 F.3d 775, 780 (9th Cir. 2002). The doctrine is applicable

whenever the enforcement of a claim subject to a specific regulatory scheme requires resolution of issues that are within the special competence of an administrative body. See Davel Commc'ns, 460 F.3d at 1086.  The doctrine is furthermore appropriate where conduct is alleged which is "at least arguably protected or prohibited by a regulatory statute," and agency resolution of an issue "is likely to be a material aid to any judicial resolution."  See, e.g., GTE.Net LLC v. Cox Commc'ns, Inc., 185 F. Supp. 2d 1141, 1144 (S.D. Cal. 2002)(granting motion to stay on primary jurisdiction grounds).

While no fixed formula exists for applying the doctrine, the Ninth Circuit traditionally looks to four factors that must be satisfied for the doctrine to apply: (1) the need to resolve an issue that; (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority; (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that; (4) requires expertise or uniformity in administration.  See Davel, 460 F.3d at 1087; United States v. Gen. Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir. 1987).

On balance, the court finds these factors satisfied here.  Plaintiff has alleged that defendants' internet management practices with respect to "peer to peer" ("P2P") file sharing applications are unlawful, and unfairly discriminate against P2P applications. See, e.g., Complaint at ¶¶ 3-4 ("by impairing use of the Blocked Applications while permitting the unimpaired use of other applications, defendants unfairly discriminate against certain internet applications, in violation of established [FCC] policy"); id. at ¶¶ 58-59 (allegations that defendants "unreasonably, secretly, and in bad faith schem[ed] to impede use of the blocked applications"); id. at ¶ 88 (defendants violated CFAA by taking actions "in order to block and/or impede [class members'] use of the Blocked Applications"); id. at ¶ 90 (alleging that "defendants' practice of discriminating against use of the Blocked Applications violates FCC Policy Statement, FCC 05-151").  This issue – i.e., the reasonableness of a broadband provider's network management practices – has, however, been firmly placed within the jurisdiction of the Federal Communications Commission ("FCC"), an

administrative agency whose authority to regulate internet broadband access companies' services is well-established. See 47 U.S.C. § 151 et seq. (establishing FCC and charging it with task of regulating interstate communications); see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 1002 (2005); In re Appropriate Framework for Broadband Access to the Internet Over Wireline Facilities, 20 F.C.C.R. 14853, ¶¶ 1, 109 ("In this Order, we establish a new regulatory framework for broadband Internet access services offered by wireline facilities-based providers").

Indeed, the FCC's expertise on the precise issue raised by plaintiff – *Comcast*'s reasonable internet management vis-a-vis its P2P protocols – is already being sought. Two petitions, filed by Free Press and Vuze, Inc., are currently pending before the FCC and specifically ask the FCC to (a) adopt reasonable rules preventing network operators from adopting practices that discriminate against particular internet applications, and (b) enjoin Comcast from managing P2P applications. See Def. Mot. at 11:15-16; 11:24-12:1. The FCC has furthermore announced that it will actively investigate the issue of Comcast's network interference with P2P applications, and it has sought public comment to that effect. See, e.g., id. at 12:2-6. The FCC's actions on this issue make sense, moreover, as the reasonableness of defendants' internet management practices logically implicate issues that require expertise or uniformity in administration. See Nat'l Cable & Telecomms. Ass'n, 545 U.S. at 1002 (noting that Commission's regulation and categorization of broadband internet providers raised questions that involve a "subject matter [that] is technical, complex and dynamic," and that "[t]he Commission is in a far better position to address these questions than we are").

Based on the above, the court concludes that the FCC is already using its recognized expertise to consider some of the exact questions placed before the court here, in an effort to promote uniformity in internet broadband regulation. As such, all prerequisites for application of the primary jurisdiction doctrine are satisfied. See Davel Commc'ns, 460 F.3d at 1087. Accordingly, the court will allow the FCC to resolve its

3

investigation into reasonable internet management practices, particularly with respect to Comcast's P2P network management, prior to reaching that issue in the action before the court here. Defendants' request to stay the action is GRANTED, pending the FCC's resolution of the network management issues noted above.

The stay shall furthermore apply to all claims in this action. While plaintiff is correct that not all claims implicate the reasonableness of Comcast's network management practices, even those claims that do not directly implicate the issue – e.g, plaintiff's claims for breach of contract, false advertising, etc. – are nonetheless sufficiently interrelated with the network management issue such that it cannot be said that the FCC's consideration and determination of the network management issue will have no impact on resolution of these claims. See, e.g., Complaint at ¶ 52 ("defendants unjustifiably breached the contract by restricting plaintiff's and the class' access to, and use of, the Service"); id. at ¶ 55 ("defendants did not inform plaintiff and the class that it could or would limit their service by impeding and/or blocking the Blocked Applications"); id. at ¶ 72 (allegations that defendants unlawfully "promote[] and advertis[e] the fast speeds that apply to the Service without limitation, when, in fact, defendants severely limit the speed of the Service for certain applications"). Indeed, the court finds it not altogether unlikely that the FCC's resolution of the underlying technology questions at issue may impact the very extent to which defendants' network management protocols can form the basis for legal liability.

In sum, application of the primary jurisdiction doctrine is appropriate. While the court finds defendants' other arguments (preemption and failure to state a claim) less persuasive, the court declines to reach the merits of those arguments in light of the stay. Within thirty days following action by the FCC, the parties shall meet and confer and advise the court how they wish to proceed, if at all, on these remaining grounds, and shall request a mutually agreeable Thursday for a case management conference.

For calendar control purposes, the court requests a status statement to be filed on or about December 12, 2008, if the FCC has not acted by then. The parties' requests for

judicial notice are also GRANTED.

**IT IS SO ORDERED.**

Dated: June 25, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge

5